

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Bert Ford, Administrator
Texas Liquor Control Board
Austin, Texas

Dear Sir:                    Attention: Mr. C. A. Paxton

Opinion No. O-3216
Re: Authority of holder of Whole-
saler's Permit under Subsec-
tion (8), Section 15, Article
I, Texas Liquor Control Act,
(Art. 666-15, Penal Code) to
sell liquor, under the facts
and conditions stated, to
"Officers' Clubs", located
on a military reservation
over which the State of Texas
has ceded to the United States
exclusive jurisdiction, with-
out reserving any right to
exercise its legislative au-
thority.

Your letter of February 28, 1941, submits for
our opinion the following questions, which we quote there-
from:

"At the various army and naval bases estab-
lished within the State of Texas there are organ-
izations known as 'Officers' Clubs'. These clubs
are formed at the discretion of the Post Commander
of Post in which each club is located. Members
must be commissioned officers of the Army or Navy,
and the clubs are governed by club officers and
a Board of Governors consisting of the membership,
which are elected by club members.

"There are no existing War or Navy Department
regulations with reference to the establishment,
operation, or maintenance of such clubs. The clubs
operate officers' messes with a bar in conjunction

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

and initial bar fees are assessed against each new
member. Succeeding monthly fees are determined by
the value of drinks or of liquor dispensed against
the individual's account during the previous month.
When a member is transferred from one Post to an-
other, the initial bar fee, if not absorbed by
charges, is refunded. All profits from the sale
of drinks at Officers' Clubs are used to make im-
provements, pay overhead expenses, and for the en-
tertainment of the members and their friends. It
is plain that Officers' Clubs are not instrumen-
talities of the government, as provided in (PUBLIC-
No. 819, - 76 Congress) (Chapter 787-3d Session)
(H. R. 6687).

"It is to be presumed under the circumstances
that any liquors sold to Officers' Clubs or ac-
quired by Officers' Clubs are subject to state
taxation under the levy section of Section 21,
Article I, Texas Liquor Control Act, wherein a
tax is imposed upon first sale and first sale is
defined to include sale, possession, distribution,
or use.

"Subsection (6), Section 15, Article I of the
Texas Liquor Control Act provides for a class of
liquor dealer known as a wholesaler, privileged to
sell liquor to retailers and wholesalers authorized
to sell liquor under state law. Separate provi-
sions of law provide for the types of permits re-
quired for selling liquor to consumers. Section
17, Article I, of the Texas Liquor Control Act, pro-
hibits a wholesaler from having an interest in a
retail permit or license or the business thereof.
Section 21, Article I of the Texas Liquor Control
Act, contains the provisions of law by which a tax
is imposed upon liquor and the provisions for ex-
emptions of normal tax for out of state shipments,
and for the assessment of stipulated fees as to
liquors intended for shipment without the State.

"At the present time we are confronted with
a problem whereby out of state wholesalers have
followed the practice of shipping liquors to Of-
ficers' Clubs at various places on federal reserva-
tions, and it appears that such Officers' Clubs

are inclined to favor this type of transaction as they are enabled thus to purchase liquor at wholesale prices and such shipments do not bear the state tax.

"Practically all Officers' Clubs are located on federal areas as to which the State has ceded police jurisdiction to the Federal Government. It has occurred to us that if we have no police jurisdiction over these areas a wholesale liquor dealer in Texas would be privileged to sell and deliver liquor to the Officers' Clubs without being subject to the restrictions normally imposed. If this were permitted, the state wholesalers would affix state tax stamps to such liquor and we would not be faced with the necessity of trying to collect the tax from Officers' Clubs where interstate shipments are made to them. As a matter of fact, such officers as have commented on the matter have expressed willingness to pay the state tax and to buy liquors from wholesale dealers provided they are extended wholesale prices.

"The question arising is naturally as to whether a sale and delivery by a wholesale dealer to a federal area as to which the State has ceded police jurisdiction would be, in effect, an interstate transaction and be freed from the restrictions applying to intrastate commerce. Under the conditions stipulated, your valued opinion is desired as to the following questions:

"(1). Would the holder of a Wholesaler's Permit be privileged to sell liquor to Officers' Clubs, such sales to be consummated upon deliveries made in vehicles, and by such wholesalers onto federal property where established on

"(a). Federal areas in respect to which police jurisdiction has by the State been ceded to the Federal Government;

"(b). Areas occupied by United States military forces but as to which no cession of police jurisdiction has by the State been made to the Federal Government.

"(2). If it is your opinion that liquors may
be lawfully sold by wholesalers to Officers' Clubs
under either of the conditions stipulated, would
such wholesalers be required to pay, in addition
to the tax levied upon first sale, also the package
charge against shipments exported from the State
as provided for in Section 21, Article I of the
Texas Liquor Control Act?

"As to all questions herein presented it is
to be assumed that the Officers' Clubs are situated
within areas of the State wherein the sale of liq-
uor has not been prohibited by local option election."

With reference to Subdivision (a) of your first
question, it is our opinion that the holder of a Wholesaler's
Permit may lawfully sell liquor to Officers' Clubs, where such
sales are consummated within the confines of a military reser-
vation over which exclusive jurisdiction has been ceded to
the Federal Government by the State of Texas, without being
subject to the regulatory provisions of the Liquor Control Act
which would otherwise be applicable if such sales were made
by the holder of a Wholesaler's Permit within the State of
Texas but outside the limits of such Federal Reservation. It
not appearing that the State of Texas has reserved any right
to exercise its legislative authority over the various areas
in this State ceded to the Federal Government for the estab-
lishment of military reservations or other proper Federal uses,
we think the question is foreclosed by the opinion of the
Supreme Court of the United States in Standard Oil Company of
California v. California, 291 U. S. 242, 78 L. Ed. 775, wherein
it was stated:

"Appellant challenges the validity of the
taxing act as construed by the Supreme Court. The
argument is that since the State granted to the
United States exclusive legislative jurisdiction
over the Presidio, she is now without power to
impose taxes in respect of sales and deliveries
made therein. This claim, we think, is well-
founded; and the judgment below must be reversed.

"In three recent cases--Arlington Hotel Co.
v. Fant, 278 U. S. 439, 73 L. ed. 447, 49 S. Ct.
227; United States v. Unzeuta, 281 U. S. 138, 74
L. ed. 761, 50 S. Ct. 284, and Surplus Trading Co.

v. Cook, 281 U. S. 647, 74 L. ed. 1091, 50 S. Ct.
455-- we have pointed out the consequences of
cession by a State to the United States of juris-
diction over lands held by the latter for mili-
tary purposes. Considering these opinions, it
seems plain that by the Act of 1897 California
surrendered every possible claim of right to
exercise legislative authority within the Pre-
sidio-- put that area beyond the field of opera-
tion of her laws. Accordingly, her Legislature
could not lay a tax upon transactions begun and
concluded therein.

"Arlington Hotel Co. v. Fant, 278 U. S. 439,
73 L. ed. 447, 49 S. Ct. 227, denied the power
of Arkansas by Legislation to modify the liabil-
ity of innkeepers within a reservation ceded by
her to the United States.

"United States v. Unzeuta, 281 U. S. 138,
74 L. ed. 761, 50 S. Ct. 284, affirmed the ex-
clusive jurisdiction of the United States over
crimes committed within the reservation lying
within Nebraska. Jurisdiction had been ceded
by the State.

"Surplus Trading Co. v. Cook, 281 U. S. 647,
74 L. ed. 1091, 50 S. Ct. 455, ruled that land
within Arkansas purchased by the United States
for military purposes with the State's consent
was under their exclusive jurisdiction. Private
personal property therein was declared not sub-
ject to taxation by the State.

"The principle approved in those cases applies
here. A State can not legislate effectively con-
cerning matters beyond her jurisdiction and within
territory subject only to control by the United
States."

Although this case involves the exercise of the
tax powers of a state within the limits of a ceded federal
area, we think it equally controlling, in principle, to the

instant question, involving the exercise of the police or
regulatory powers of the state. The full effect of the
holding is that all state legislation, regardless of its
source, nature or purpose, falls before the act of cession,
and has no force or efficacy beyond the established limits
of such ceded territory.

Our conclusion if not altered by the provisions
of the "Buck Resolution" (Public--819--76 Congress, Chapter
787, 3rd Session, H. R. 6687), effective January 1, 1941,
because such measure merely gives congressional assent to
the collection by the various states, of sales or use taxes
accruing within the confines of Federal areas over which
exclusive jurisdiction has been ceded by such states to
the Federal Government, and which areas had theretofore
been freed from state taxation under the above decision.
But with this exception, all jurisdiction which has been
acquired by and reserved to the United States over such Fed-
eral areas or military reservations, under the cessions of
exclusive jurisdiction by the various states, is not in any
way limited or impaired by the "Buck Resolution". The police
or regulatory power of the State, such as the requirements
of the Texas Liquor Control Act, regulating the sale of liq-
uor within the State, does not and cannot, under said con-
gressional measure, reach over into such ceded areas, and
the holder of a Wholesaler's Permit is yet authorized under
the case of the Standard Oil Company of California v. Califor-
nia, supra, to sell liquor to an Officers' Club within such
area, free of the restrictions and requirements of the Texas
Liquor Control Act. This is made plain by the express pro-
vision of the "Buck Resolution", in Section 4 thereof:

> "The provisions of this Act shall not for
> the purpose of any other provision of law be
> deemed to deprive the United States of exclusive
> jurisdiction over any federal area over which it
> would otherwise have exclusive jurisdiction or
> to limit the jurisdiction of the United States
> over any Federal area."

Of course, the principle of immunity of persons
and property within ceded Federal areas from the legislative
powers of the State, declared in the case of Standard Oil
Company of California v. California, supra, would not apply
to the situation presented by Subdivision (b) of your first
question. Federal areas within the State of Texas over which
exclusive jurisdiction has not been ceded by the State to the
Federal Government, would be subject to the legislative powers

of the State, including the provisions of the Texas Liquor
Control Act controlling intrastate transactions, despite
the fact that such area was occupied and used by the mili-
tary forces of the United States. However, if the described
Officers' Clubs, located in such areas, are agencies or in-
strumentalities of the Federal Government, for the purpose
of carrying out its constitutional functions, another theory
of immunity from state legislation would be presented. We
do not discuss this question as it is not within the scope
of your inquiry.

With reference to your second question, it is our
opinion that liquors may be lawfully sold by the holder of a
Wholesaler's Permit to Officers' Clubs under the conditions
or circumstances stated in either Subdivision (a) or (b) of
your first question, without the payment by such wholesalers
of the package charge or fee required upon interstate ship-
ments, under Section 21, Article I, of the Texas Liquor Con-
trol Act, providing, in part, as follows:

"... . Any person authorized to export liq-
uor from this State having in his possession any
liquor intended for shipment to any place without
the State, shall keep such liquors in a separate
compartment from that of liquors intended for
sale within the State so that the same may be eas-
ily inspected and shall attach to each such package
of liquor so intended for shipment without the
State a stamp of the kind and character that shall
be required by proper rule or regulation denoting
that the same is not intended for sale within the
State. When such liquors are so kept and so stamp-
ed no tax on account thereof shall be charged. For
defraying the expenses thereof, a charge of Twenty-
five (25) Cents shall be made for every such stamp,
except that a charge of Ten (10) Cents shall be
made for each such stamp placed on vinous or malt
liquors of twenty-four (24) per cent alcoholic con-
tent or less. All such permittees authorized to
transport liquor beyond the boundaries of this
State shall furnish to the Board duplicate copies
of all invoices for the sale of such liquors with-
in twenty-four (24) hours after such liquors have
been removed from their place of business."

We think the foregoing provisions contemplate the shipment or transportation of liquor beyond the external boundaries of the State of Texas, in interstate commerce, according to the strict and usual meaning of the term. Although the transportation, shipment or sale of goods and commodities into and within military reservations and other Federal areas over which exclusive jurisdiction has been ceded by the State, bears a strong analogy, as regards only the legal consequences or results flowing therefrom, to traffic or commerce between the State of Texas and another state, such transactions do not constitute interstate shipments, within the contemplation of the above-quoted provision of the Texas Liquor Control Act, requiring a package fee on liquor intended for shipment without the State. Consistently with this interpretation, liquor which is sold under the conditions and circumstances stated in your letter, bears the burden of the regular stamp tax levied by the liquor Control Act upon intrastate sales. For these reasons, we answer your second question in the negative.

Trusting that the foregoing fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Pat M. Neff, Jr.
Assistant

PMN:LM

APPROVED MAR 28, 1941

ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY